**2017 BNH 019**
_____

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW HAMPSHIRE

In re:                                                           Bk. No. 13-11736-BAH
                                                                 Chapter 7
Thomas L. Morgenstern,
                Debtor

Town of Hampton,
                Plaintiff

v.                                                               Adv. No. 16-1390-BAH

Thomas L. Morgenstern,
                Defendant


_Christine W. Casa_                          _David P. Azarian, Esq._
_Boynton, Waldron, Doleac, Woodman & Scott, P.A._     _Azarian Law Office, PLLC_
_Portsmouth, New Hampshire_                  _Dover, New Hampshire_


## <u>MEMORANDUM OPINION</u>

## I.  INTRODUCTION

This proceeding is before the Court on the plaintiff Town of Hampton's (the "Town")

complaint (the "Complaint") in which the Town seeks to except from discharge amounts the

Rockingham County Superior Court ("Superior Court") awarded in a judgment entered pursuant

to N.H. R.S.A. § 676:17.[1]  The Town contends the judgment amounts are nondischargeable

because they fall within the scope of the exception to discharge of 11 U.S.C. § 523(a)(7)[2]—

covering fines and penalties owed to a governmental unit—and because the judgment amounts

---

[1] Hereinafter, references to "R.S.A." refer to the New Hampshire Revised Statutes Annotated, unless otherwise indicated.
[2] All further references to "§," "section," or "Code" are references to title 11 of the United States Code, (the "Bankruptcy Code").

pertain to postpetition debts, outside the scope of a chapter 7 discharge.  The debtor, Thomas

Morgenstern, (the "Debtor") opposes the Town, asserting that all the judgment amounts are

dischargeable.  This Court has jurisdiction of the subject matter and the parties pursuant to 28

U.S.C. §§ 1334 and 157(a) and Local Rule 77.4(a) of the United States District Court for the

District of New Hampshire.  This is a core proceeding in accordance with 28 U.S.C. §

157(b)(2)(I).

## II.  FACTS

### A.  Procedural History

The Debtor filed this bankruptcy case under chapter 13 on July 8, 2013 (the "Petition

Date").  The Court converted the case to chapter 7 on August 16, 2013 (the "Conversion Date").[3]

On December 16, 2016, the Town filed the Complaint.  After an initial pretrial conference, the

parties agreed to stipulate to a factual record and have the Court determine the merits of the

Complaint based on that stipulated record.  The Court blessed this approach in a procedural

order.[4]  The parties filed a stipulation[5] and briefs,[6] and the Court took the matter under

advisement.

### B.  The Stipulated Record

The Court draws the following facts from the Stipulated Record.  For many years before

the petition date, the Town and the Debtor were embroiled in a dispute over the Debtor's use of

his real property, located at 18-20 Cutler Ave. in Hampton, New Hampshire (the "Property"), as

a three-unit rental property.[7]  The Town filed the lawsuit specifically at issue here on October 2,

---

[3] Order at Doc. No. 17.
[4] Doc. No. 18.
[5] Doc. No. 32, with amended exhibits 2, 3, and 8 at Doc. No. 38, collectively, the "Stipulated Record."
[6] The Town's briefs are at Doc. No. 35 and at Doc. No. 24.  The Debtor's brief is at Doc. No. 34.
[7] Ex. 1, "Amended Stipulation of Undisputed Material Facts," ¶ 7; Ex. 2, Rockingham Superior Court Final Order, dated 12/20/2013 at 1 (the "Final Order").

2012 (the "State Court Proceeding").[8]  The Debtor filed a counterclaim on January 9, 2013.[9]
The suit continued through the Petition Date unabated—despite obtaining permission from the
trustee to continue prosecuting his counterclaim, the Debtor did not inform the Town or the
Superior Court about his bankruptcy filing.[10]  After a trial on the merits, the Superior Court
issued the Final Order, finding that the Debtor had maintained the Property illegally in using it as
a three-unit residence; permanently enjoining him from using it in this fashion; granting the
Town's request for penalties and reimbursement of costs pursuant to R.S.A. § 676:17 I, II, and
III, and denying all the relief the Debtor had requested in his counterclaims.[11]  The Superior
Court then directed the Town to file an affidavit of damages so it could fix the amount of the
award.

On January 23, 2014, the Town complied with the Final Order and filed a "Motion for
Approval of Amounts Due in Attorney's Fees, Costs and Civil Fines and Penalties."[12]  In this
motion, the Town requested $737,000 in civil penalties, $3,828 in attorney's fees, and $305 in
costs pursuant to R.S.A. § 676:17.  Soon thereafter, the Superior Court got wind of the Debtor's
bankruptcy and issued a notice staying and administratively closing the case as of February 3,
2014.[13]

To rectify this situation, the Town filed a stay relief motion with this Court, seeking
authority to continue the State Court Proceeding and finalize the damages award.[14] The Court
granted this motion, without opposition, on March 13, 2014.[15]  With the stay lifted, the Superior
Court entered an order granting the Town's motion requesting damages, in the absence of any

---

[8] Final Order at 1.
[9] Id.
[10] Ex. 1, ¶ 9.
[11] Final Order at 8.
[12] Ex. 3.
[13] Ex. 4, Superior Court's "Clerk's Notice Bankruptcy Stay."
[14] Ex. 5, "Town of Hampton's Assented to Motion for Relief from Automatic Stay."
[15] Ex. 6, Order Granting Motion for Relief (Doc. No. 86).

objection. This order entered a final judgment in favor of the Town and against the Debtor in the amount of $741,133.40.[16] Of that amount, $737,000 was for civil penalties pursuant to R.S.A. § 676:17(I) (the "Penalty Award") and $4,133.40 was for attorney's fees and costs pursuant to R.S.A. § 676:17(II) (the "Fee and Cost Award").[17]

## III. DISCUSSION

As an initial matter the Court will first discuss the validity of the Final Order, which was entered before the Town obtained relief from the automatic stay. The Court will then set out the general standards applicable in proceedings to determine the dischargeability of a debt, move on to a detailed discussion of § 523(a)(7) and R.S.A. § 676:17, and then distinguish between the debt attributable to the prepetition and postpetition portions of the Penalty Award and the Fee and Cost Award.

### A. Status of the Final Order

Although the parties did not raise the issue of the validity of the Superior Court's Final Order, the Court finds it prudent to address this issue first. The Petition Date, and so the automatic stay, preceded the Superior Court's entry of the Final Order, and the Court had not modified or lifted the stay when the Final Order entered. Actions taken in violation of the automatic stay of § 362(a) are void. Soares v. Brockton Credit Union (In re Soares), 107 F.3d 969, 975-976 (1st Cir. 1997). If the Court did not address this issue, the validity of the Final Order would be questionable, leaving the effectiveness of that order in doubt, and—by extension—any of this Court's orders addressing the dischargeability of the Penalty Award and the Fee and Cost Award.

---

[16] Ex. 7, "Notice of Decision," dated April 25, 2014.
[17] See Ex. 3. The Town requested $3,828 in attorney's fees and $305.40 in costs.

4

The Court can put this issue to rest quickly, as the Final Order falls within a well-defined exception to the automatic stay:  the police and regulatory power exception of § 362(b)(4).  This section provides:

> (b) The filing of a petition under section 301, 302, or 303 of this title, or of an application under section 5(a)(3) of the Securities Investor Protection Act of 1970, does not operate as a stay—
> (4) under paragraph (1), (2), (3), or (6) of subsection (a) of this section, of the commencement or continuation of an action or proceeding by a governmental unit . . . to enforce such governmental unit's or organization's police and regulatory power, including the enforcement of a judgment other than a money judgment, obtained in an action or proceeding by the governmental unit to enforce such governmental unit's or organization's police or regulatory power[.]

11 U.S.C. § 362(a).  First, the Town falls within the definition of a "governmental unit."[18] Second, enforcement of a zoning regulation, the goal of the State Court Proceeding, is a classic example of a police and regulatory power action.  See In re Cousins Restaurants, Inc., 11 B.R. 521 (Bankr. W.D.N.Y. 1981) (court refused to enjoin town from its zoning enforcement action against the debtor, given that such an action fell within the § 362(b)(4) exception).  To determine whether the § 362(b)(4) exception applies, the Court examines the "public policy" and "pecuniary purpose" of the governmental unit's actions under the totality of the circumstances. McMullen v. Sevigny (In re McMullen), 386 F.3d 320, 325 (1st Cir. 2004); Spookyworld, Inc. v. Town of Berlin (In re Spookyworld, Inc.), 346 F.3d 1, 9 (1st Cir. 2003).  The primary purpose of the litigation before the Superior Court was the Town's enforcement of its zoning laws including the obtaining of a permanent injunction to keep the Debtor from using the Property as a three-unit residence and punishing the Debtor for his past violations.  At no time was the Town seeking the enforcement of a money judgment.   Before the Superior Court awarded damages,

---

[18] "The term "governmental unit" means United States; State; Commonwealth; District; Territory; municipality; foreign state; department, agency, or instrumentality of the United States (but not a United States trustee while serving as a trustee in a case under this title), a State, a Commonwealth, a District, a Territory, a municipality, or a foreign state; or other foreign or domestic government."  11 U.S.C. § 101(27) (emphasis added).

the Town obtained stay relief (to the extent such relief may have been necessary).  Accordingly, the Court finds that the § 362(b)(4) exception applies and the Final Order was valid when the Superior Court issued it.

### B.  Dischargeability of R.S.A. § 676:17 Penalties, Fees, and Costs

Bankruptcy is intended to provide a fresh start to the proverbial honest debtor beset by financial misfortune, but is not supposed to shield any debtor from prepetition malfeasance.  See Richmond v. N.H. Sup. Ct. Comm. on Prof'l Conduct (In re Richmond), 542 F.3d 913, 917 (1st Cir. 2008).  To that end, numerous exceptions to the discharge exist.  The relevant exception in this case, contained in § 523(a)(7), provides that any debt is nondischargeable

> to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss, other than a tax penalty—
> (A) relating to a tax of a kind not specified in paragraph (1) of this subsection; or
> (B) imposed with respect to a transaction or event that occurred before three years before the date of the filing of the petition[.]

11 U.S.C. § 523(a)(7).  Courts construe discharge exceptions narrowly, and a plaintiff seeking to except a debt from the discharge must demonstrate that the relevant facts come "squarely" within one of the statutory exceptions.  Palmacci v. Umpierrez (In re Palmacci), 121 F.3d 781, 786 (1st Cir. 1997).  A three-part test serves as the gatekeeper of the § 523(a)(7) exception.  The Town must show that the amounts awarded in the Final Order are "(1) 'a fine, penalty, or forfeiture,' (2) 'payable to and for the benefit of a governmental unit,' and (3) 'not compensation for actual pecuniary loss.'"  Richmond, 542 F.3d at 917.  The Town bears the burden of proof of each element by a preponderance of the evidence.  Grogan v. Garner, 498 U.S. 279, 291 (1991).

The Court has already found that the Town is a governmental unit within the definition of § 101(27).  See supra at § III(A).  The Court will now discuss elements (1) and (3) as they apply to the Penalty Award and the Fee and Cost Award.

i. <u>Penalty Award — R.S.A. § 676:17(I)</u>

In the Final Order, the Superior Court awarded the Town civil penalties pursuant to

R.S.A. § 676:17(I).  This section of the statute provides that

> Any person who violates any of the provisions of this title, or any local ordinance, code, or regulation adopted under this title, or any provision or specification of any application, plat, or plan approved by, or any requirement or condition of a permit or decision issued by, any local administrator or land use board acting under the authority of this title shall be guilty of a misdemeanor if a natural person, or guilty of a felony if any other person; and shall be subject to a civil penalty of $275 for the first offense, and $550 for subsequent offenses, for each day that such violation is found to continue after the conviction date or after the date on which the violator receives written notice from the municipality that the violator is in violation, whichever is earlier. Each day that a violation continues shall be a separate offense.

R.S.A. § 676:17(I).[19]  The determination of whether a civil penalty awarded under this statute is

a "fine, penalty, or forfeiture" within the meaning of § 523(a)(7) is a question of federal law; a

state statute's designation of a monetary award as a one of these three types is non-determinative,

but may be persuasive.  <u>City of Phila. v. Nam (In re Nam)</u>, 273 F.3d 281, 288 (3d Cir. 2001);

<u>Hickman v. Tex. (In re Hickman)</u>, 260 F.3d 400, 405 (5th Cir. 2001).

The Penalty Award falls squarely within the meaning of "fine, penalty, or forfeiture" as

defined in § 523(a)(7).  There is nothing in the record in this case that causes the Court to look

beyond the text of R.S.A. § 676:17(I) to make that determination.  The statute simply allows the

state court to penalize violations of zoning provisions with flat monetary sanctions for each day

of the violation.  The Debtor does not dispute the characterization as a penalty, choosing instead

to focus on whether the penalty serves a compensatory rather than punitive purpose.

The Debtor argues that the penalties are compensatory rather than punitive because the

Superior Court imposed the penalties in the context of a civil proceeding, rather than a criminal

---

[19] Section 17 is part of Title LXIV, "Planning and Zoning," chapter 676, "Administrative and Enforcement Procedures."  Section 17 is entitled as "Fines and Penalties; Second Offense."  Although § 17(I) appears to criminalize violations, there is no evidence that the proceeding before the Superior Court was criminal in nature.

prosecution. The Court is not persuaded by this argument. Section 523(a)(7) does not distinguish between a criminal and civil fine or penalty. The same analysis applies regardless of the civil or criminal context of the penalty. The Court needs to consider whether the fine, penalty, or forfeiture "serve[s] some 'punitive' or 'rehabilitative' governmental aim, rather than a purely compensatory purpose." Whitehouse v. Laroche, 277 F.3d 568, 573 (1st Cir. 2002). Here, the Court cannot identify any compensatory purpose for the Penalty Award, let alone find that its purpose was purely compensatory. The Penalty Award was issued based on a flat sum for each day of the violation and there is nothing in the record that would serve as an actual loss that the penalties were compensating the Town for. The Debtor does supply any argument that would help the Court fill in this evidentiary gap. Accordingly, the Court concludes that the Penalty Award meets the criteria for exception from the discharge pursuant to § 523(a)(7).

ii. The Fee and Cost Award — R.S.A. § 676:17(II)

The Fee and Cost Award is a different matter. The Superior Court issued this award pursuant to R.S.A. § 676:17(II). This section provides that:

> In any legal action brought by a municipality to enforce, by way of injunctive relief as provided by RSA 676:15 or otherwise, any local ordinance, code or regulation adopted under this title, or to enforce any planning board, zoning board of adjustment or building code board of appeals decision made pursuant to this title, or to seek the payment of any fine levied under paragraph I, the municipality shall recover its costs and reasonable attorney's fees actually expended in pursuing the legal action if it is found to be a prevailing party in the action. For the purposes of this paragraph, recoverable costs shall include all out-of-pocket expenses actually incurred, including but not limited to, inspection fees, expert fees and investigatory expenses.

R.S.A. § 676:17(II) (emphasis added).  The Debtor argues that the language of the statute militates in favor of the Court construing the Fee and Cost Award as purely compensatory in nature, focusing on the language stating that a municipality can recover its costs and attorney's fees "actually expended."  The Town counters with two arguments: (1) attorney's fees and costs are generally considered nondischargeable when the underlying debt is nondischargeable, and (2) that it is "well established" that attorney's fees and costs are not compensation for actual pecuniary loss within the meaning of § 523(a)(7).

As to the Town's first argument, the dischargeability of attorney's fees is a more nuanced issue than a simple and general rule that such fees are nondischargeable if an underlying judgment is nondischargeable.  The legal authorities the Town cites in favor of this argument are inapplicable in the context of this case.  Littlefield v. McGuffey is representative of these authorities.  Littlefield v. McGuffey (In re McGuffey), 145 B.R. 582 (Bankr. N.D. Ill. 1992).  In McGuffey, the bankruptcy court addresses whether a creditor's claim on account of a prepetition judgment that awarded damages (including attorney's fees) for violations of civil rights and fair housing laws was excepted from the discharge pursuant to § 523(a)(6).  Section 523(a)(6) excepts debts obtained "for willful and malicious injury by the debtor to another entity or to the property of another entity." The McGuffey court applied the elements of issue preclusion to determine whether the facts found in the prepetition judgment were sufficient to satisfy the elements of § 523(a)(6).  After concluding in the affirmative on this issue, the Court went on to find that the attorney's fees were nondischargeable as well, because they were part of the damage caused by the debtor's willful and malicious injury.  Id. at 597.  The other cases the Town cites are similar.  See Klingman v. Levinson, 831 F.2d 1292, 1296-97 (7th Cir. 1987) (attorney's fees included in prepetition consent judgment nondischargeable pursuant to § 523(a)(4) after applying the elements of issue preclusion); Doucette v. Kwiat (In re Kwiat), 62 B.R. 818, 823 (Bankr. D.

Mass. 1986) (rev'd in part on other grounds) (attorney's fees in prepetition judgment nondischargeable pursuant to § 523(a)(4) as part of actual damages); Safeco Ins. Co. v. Orrick (In re Orrick), 51 B.R. 92, 96 (Bankr. N.D. Ok. 1985) (same but pursuant to § 523(a)(6)).

The Court concludes that these authorities stand for the proposition that attorney's fees relating to a prepetition judgment may be nondischargeable if they fall independently within an exception to discharge.  In McGuffey, the attorney's fees were not nondischargeable simply because they were awarded in connection with a nondischargeable, prepetition judgment, but because the attorney's fees were part of damages the creditor suffered on account of the willful and malicious injury the debtor inflicted.  The general rule the Town advocates would run afoul of the maxim that debts are dischargeable unless then come squarely within one of the exceptions in the Bankruptcy Code.  The Fee and Cost Award will only be excepted from the discharge if it satisfies the elements of § 523(a)(7).

The Court finds that it does not satisfy those elements.  The Fee and Cost Award was a non-discretionary award of attorney's fees and costs to the Town intended to compensate it, rather than punish the Debtor.  The structure of R.S.A. § 676:17, New Hampshire Supreme Court precedent, and the factual record support this finding.  The Town argues that the Fee and Cost Award is a fine or penalty that serves some punitive purpose, and is not wholly compensatory in nature, under the rationale of the First Circuit's decision in Richmond v. Committee on Professional Conduct.  In Richmond, the court affirmed Judge Deasy's decision excepting an attorney's fee award from the discharge pursuant to § 523(a)(7) in the context of a New Hampshire attorney discipline proceeding.  Richmond, 542 F.3d at 913.  Richmond, the attorney subject to discipline, had been ordered to pay the Professional Conduct Committee's attorney's fees and court costs incurred in prosecuting the case.  Id. at 916-17.  With regard to the "fine, penalty, or forfeiture" element, the court concluded that the discretionary nature of the fee award

10

"strongly suggested" that it was a penalty.  Id. at 918.  By contrast, the text of R.S.A. §

676:17(II) makes an award of attorney's fees and costs mandatory to a prevailing municipality.

Town of Carroll v. Rines, 164 N.H. 523, 532 (2013).  While the Court does not find that the

mandatory nature of the Fee and Cost Award is dispositive, when taken in conjunction with the

compensatory purpose of the Fee and Cost Award, it is sufficient for the Court to find that the

Fee and Cost Award is not excepted from the discharge.

   As to the final element of § 523(a)(7), the Town argues—again under Richmond—that

the Fee and Cost Award serves some punitive purpose and is not just compensatory.  The

Richmond court reasoned that the fee award was not purely compensatory by analogy to the

Supreme Court's decision in Kelly v. Robinson, which found that a criminal restitution order

served a sufficiently punitive purpose in the context of the criminal justice system for it to come

within the § 523(a)(7) exception.  Richmond, 542 F.3d at 920-921 (citing Kelly v. Robinson, 479

U.S. 36 (1986)).  Likewise, in the context of the attorney disciplinary system, the First Circuit

found that a cost award served a punitive purpose, noting that "cost assessments serve both to

deter attorney misconduct and to help rehabilitate wayward attorneys."  Id. at 920.  The

Richmond court also noted that the majority of bankruptcy courts addressing the dischargeability

of fee and cost awards resulting from attorney disciplinary proceedings had found such fees and

costs to be nondischargeable.  Id.

   The Court declines to make a hasty generalization based on Richmond: that attorney fee

and cost awards are often nondischargeable in the context of attorney disciplinary proceedings

does not mean that attorney fee and cost awards are generally nondischargeable outside of that

context.  To put it another way, attorney disciplinary proceedings may be a special case.  Rather

than risking faulty inductive reasoning, the Court will follow Richmond's directive to "look to

the context in which the [award] is made to determine whether its purpose is truly

compensatory." Id.  In making this assessment, the Court recognizes the asymmetry of the standard: the award in question must serve only "some" punitive purpose to satisfy the "not compensation for actual pecuniary loss" element—regardless of whether the award actually compensates a governmental unit.  Id. at 920-921 ("Courts have consistently held that the 'mere fact that a penal sanction is calculated by reference to actual costs does not, in and of itself, transform the penalty into compensation for pecuniary loss.'") (quoting In re Smith, 317 B.R. 302, 312 (Bankr. D. Md. 2004)).

Section 17 of R.S.A. chapter 676 contains three sections that are relevant here.  The Court has already quoted the entirety of §§ I and II and discussed them in detail.  Section III is also germane.  It provides that:

> If any violation of a local ordinance, code or regulation, or any violation of a planning board, zoning board of adjustment or building code board of appeals decision, results in the expenditure of public funds by a municipality which are not reimbursed under paragraph II, the court in its discretion may order, as an additional civil penalty, that a violator make restitution to the municipality for such funds so expended.

R.S.A. § 676:17(III).  This section explicitly allows a court to award additional restitution classified as a "civil penalty."  The Superior Court did not make any award under this section.[20] The difference in the language between §§ II and III is stark.  Section II refers to "fees actually expended" and "expenses actually incurred."  Section III refers to a "civil penalty" and "restitution."  The Court finds that the separation and juxtaposition of fees and costs as compensation and fees and costs as penalties indicative that the Fee and Cost Award, made solely under § II, was purely compensatory.  The Superior Court could have made an award under § III, but chose not to.

---

[20] See Town's Reply Brief, ¶ 7 (Doc. No. 35).

Finally, the Court finds that the New Hampshire Supreme Court case law distinguishes the Fee and Cost Award from the nondischargeable fee award in <u>Richmond</u>.  There, the First Circuit observed that the New Hampshire Supreme Court had indicated that fee and cost awards in attorney disciplinary proceedings served a punitive and rehabilitative purpose.  <u>Richmond</u>, 542 F.3d at 920.  The Court has reviewed several, recent New Hampshire Supreme Court decisions discussing R.S.A. § 676:17(II).  <u>See, e.g.</u>, <u>Rines</u> 164 N.H. at 523; <u>Town of Atkinson v. Malborn Realty Trust</u>, 164 N.H. 62 (2012); <u>Bennett v. Town of Hampstead</u> 157 N.H. 477 (2008).  None of these decisions appear to imply that the mandatory fee-shifting of § 17(II) serves a punitive purpose.  Rather, these decisions suggest that § 17(II) should be viewed as an ordinary fee-shifting provision.  <u>See</u> <u>Bennett</u>, 175 N.H. at 483-484.  Accordingly, the Court concludes that the Fee and Cost Award is compensatory and not excepted from the discharge.

### iii.  The Tax Penalty Provisions of § 523(a)(7)

As a final matter, the Court addresses the Town's argument concerning the tax penalty provisions of § 523(a)(7).  Although the Debtor did not argue this issue in his brief, the Town did raise the issue of the applicability of the "exception to the exception" for certain tax penalties.  Section 523(a)(7) does <u>not</u> except from the discharge certain tax penalties that are specifically described in its subsections (A) and (B).  The tax penalty provision is not implicated in this case.  The Penalty Award is unrelated to any tax; rather, it was issued for the Debtor's violation of the Town of Hampton's zoning ordinances.

### C.    Distinguishing the Prepetition from Postpetition Penalties and Fees

The Court will now discuss what portions of the Penalty Award and Fee and Cost Award are prepetition debts, subject to—but excepted from in the case of the Penalty Award—the discharge, and what portion of each award is attributable to postpetition debts, not subject to the discharge.  The Town argues that the entirety of the Penalty and Fee and Cost Awards are

postpetition debts that are not subject to the discharge, regardless of whether they would be excepted from the discharge pursuant to § 523(a)(7). The Town bases this argument solely on the fact that the Superior Court entered the Final Order postpetition, at which point the Town argues the awards became enforceable. This argument implies a misunderstanding of the definitions of "debt" and "claim" as those terms are defined in the Bankruptcy Code.

The Bankruptcy Code defines a debt as "liability on a claim." 11 U.S.C. § 101(12). In turn, the Code defines a claim as a

> (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or
>
> (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

11 U.S.C. § 101(5). "Claim" and "debt" are synonyms and intentionally "expansive" terms. Pa. Dept. of Pub. Welfare v. Davenport, 495 U.S. 552, 558 (1990). The Court must determine whether the Town had a claim against the Debtor that arose prior to the Petition Date.

Given the factual record, the Town did not have a claim in a fixed amount prior to the Petition Date. This does not mean that the Town did not have a prepetition claim. Rather, the Town had a claim that was unliquidated and contingent. Broadly, a contingent claim is one in which the right to payment may arise eventually, after the occurrence of some future event. See Hemingway Transp. Inv. v. Kahn (In re Hemingway Transp.), 954 F.2d 1, 8.[21] Courts have used several different tests to determine when a contingent claim arises. See CD Realty Partners, 205

---

[21] Contingent claims can be very difficult to determine—"[a]fter all, a contingent right to payment is, by definition, a right to payment that, because it is contingent, is not yet and may never be a right to payment. In the strangely appropriate language of philosopher Martin Heidegger, it might be said to exist somewhere on a continuum between being and nonbeing. At some point on that continuum, a right to payment becomes so contingent that it cannot fairly be deemed a right to payment at all." In re CD Realty Partners, 205 B.R. 651, 656 (Bankr. D. Mass. 1997).

B.R. at 656 (discussing the contract, prepetition relationship, and conduct tests).  Here, the conduct test is most useful because the factual record is clear about when the Debtor began to use the Property illegally and opened himself up to the imposition of fines and penalties.  Under this test "a contingent claim arises upon occurrence of the conduct giving rise to the claim."  Id. In the Final Order, the Superior Court determined that the Debtor had been violating the Town of Hampton's zoning laws since January 28, 2010.  Accordingly, at least as of that date, the Town had a contingent claim against the Debtor.

Having decided that the Town had a prepetition claim against the Debtor, the Court must now decide what the amount of that claim is.  This is a simple enough task for the Penalty Award.  R.S.A. § 676:17(I) makes it clear that every day of the violation is a separate offense, individually punishable.  Accordingly, under the conduct test, the Court can easily distinguish between penalties assessed for prepetition versus postpetition violations.

In this case, the cut-off date between prepetition and postpetition is complicated by the Debtor's conversion of the case from chapter 13 to chapter 7.  Claims arising in the gap period between the filing of a petition under chapter 13 and conversion to chapter 7 will be treated as prepetition claims:

> A claim against the estate or the debtor that arises after the order for relief but before conversion in a case that is converted under section 1112, 1208, or 1307 of this title, other than a claim specified in section 503(b) of this title, shall be treated for all purposes as if such claim had arisen immediately before the date of the filing of the petition.

§ 348(d).  In this case, that means that the amount of the Penalty Award attributable to days falling before the Conversion Date are part of the Town's prepetition claim.

Apportioning the Fees and Cost Award is a more difficult task.  There is no one obvious way to differentiate between attorney's fees and costs incurred to reduce to judgment the prepetition versus postpetition amounts of the Penalty Award.  There is no evidence that the

Town was pursuing its prepetition claim any differently than its postpetition claim in terms of attorney time and effort; indeed the Town was not even aware of the bankruptcy case until after the trial on the merits before the Superior Court.  Two plausible methods for apportioning the Fee and Cost Award occur to the Court.  First, the Court could simply count attorney time and costs incurred before the Conversion Date as a prepetition claim subject to the discharge, and vice versa for attorney time and costs post Conversion Date.  Second, the Court could deem the Fee and Cost Award prepetition debt in the same proportion as that of the Penalty Award.  The second approach is more equitable.  The first approach would unfairly favor the Town.  Most of the attorney time was spent after the Conversion Date because this is when the Superior Court held the trial in the State Court Proceeding.  The trial concerned the prepetition and postpetition claims equally.  Finally, the amount of the Fee and Cost Award is small when compared to the Penalty Award, so in practice, there is not a large difference in the method the Court chooses.  For these reasons, the Court finds that the Fee and Cost Award was a prepetition claim in the same proportion as the Penalty Award.  The prepetition portion of the Fee and Cost Award is subject to the discharge; the postpetition portion is not.

## IV.  CONCLUSION

As discussed above, the Court finds the Penalty Award and the Fee and Cost Award nondischargeable as follows:

**(1)**  The postpetition amount of the Penalty Award, not subject to the discharge, is $75,350.00.  To determine the postpetition amount of the Penalty Award the Court multiplied the daily penalty rate in effect as of the Conversion Date by the number of days between the Conversion Date and the last day for which the Superior Court awarded a penalty.[22]  The daily

---

[22] $75,350.00 = $550.00 \times 137_{days}$

penalty rate in effect as of the Conversion date was $550.[23]  137 days had elapsed between the Conversion Date and December 31, 2013.[24]

(2)  The prepetition amount of the Penalty Award is $661,650.00, nondischargeable pursuant to § 523(a)(7).  The Court reached this amount by subtracting the postpetition amount of the Penalty Award from the total amount of the Penalty Award.[25]

(3)  The prepetition, dischargeable amount of the Fee and Cost Award is $3,710.81. To reach this amount the Court multiplied the proportion of prepetition versus the total amount of the Penalty Award by the total amount of the Fee and Cost Award. [26]

(4)  The postpetition amount of the Fee and Cost Award, not subject to the discharge, is $422.59.[27]

This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.  The Court will issue a separate judgment consistent with this opinion.

ENTERED at Concord, New Hampshire.


Date:   December 28, 2017                    /s/ Bruce A. Harwood
                                             Bruce A. Harwood
                                             Chief Bankruptcy Judge

---

[23] See Ex. 1, ¶ 13.

[24] Id.

[25] $661,650 = $737,000 − $75,350

[26] $Fee\ and\ Cost\ Award_{prepetition} = \frac{Penalty\ Award_{prepetition}}{Penalty\ Award_{total}} \times Fee\ and\ Cost\ Award_{total}$  or

$3,710.81 = \frac{\$661,650.00}{\$737,000.00} \times \$4,133.40$

[27] $422.59 = $4,133.40 − $3,710.81